UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   03/24/2022

BRYAN SWANHART, DESIREE
BARTHOLOMEW, and JOYCE SWANHART,

                                   Plaintiffs,

        -against-

STATE OF NEW YORK, NEW YORK STATE
POLICE, GEORGE P. BEACH II, *sued both in his
individual and official capacity as Superintendent of
the New York State Police*, TROOPER KYLE
JACKSON, SHIELD # 2795, *sued both in his
individual capacity and official capacity as a
Trooper with the New York State Police*, and JOHN
DOE OFFICERS 1-5 (their true names and identities
presently unknown)*, acting both in their official and
unofficial capacities*,

                                   Defendants.

No. 20 Civ. 6819 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

        Plaintiffs Bryan Swanhart ("Bryan S."), Desiree Bartholomew, and Joyce Swanhart

("Joyce S.") bring this action under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and state common

law, alleging that after Bryan S. had a car accident after suffering a seizure, the responding New

York State trooper, instead of rendering medical assistance, allegedly (i) shook and slapped him;

(ii) had his blood drawn against his consent and released his medical information to his employer;

(iii) falsely arrested and charged him for driving while impaired, following too closely, and leaving

the scene of the crime; (iv) denied him access to his wife, Bartholomew, and his mother, Joyce S.

while hospitalized; and (v) tampered with evidence during his subsequent criminal prosecution.

(*See* Compl. at 1–9, ECF No. 1.) They sue Defendants State of New York, New York State Police,

George P. Beach II (Superintendent of the New York State Police), Trooper Kyle Jackson, and

John Doe Officers 1-5, asserting federal claims for violations of their constitutional rights, as well as an assortment of state common law claims arising from such violations. (*See id.* at 10–20.)

Presently pending before the Court is Defendants' motion to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) and (6). (ECF No. 21.) For the following reasons, the Court GRANTS Defendants' motion to dismiss.

## BACKGROUND

### I.  Factual Background

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to Plaintiffs for the purposes of this motion.[1]

> #### A.  *Bryan S. has a car accident after suffering a seizure; Trooper Jackson responds to the scene and does not provide medical assistance*

On September 1, 2017, Bryan S., a sergeant for the New York Department of Corrections and Community Supervision ("DOCCS"), had a car accident on 1360 Route 22, Southeast, New York, after suffering a seizure while driving his vehicle. (Compl. ¶¶ 14–15, 49.)  Troopers Jackson and Jane Doe 1 responded to the scene. (*Id.* ¶¶ 16–17.) Upon arriving at the scene, an unidentified off-duty New York City Police Detective, whose identity is known to Defendants, was already present at the scene and informed the troopers that Bryan S. was having a seizure. (*Id.* ¶ 17.)

Rather than addressing Bryan S.'s medical needs, Trooper Jackson shook Bryan S. and slapped him in the face. (*Id.* ¶ 19.) Trooper Jackson repeatedly and continuously yelled profanities toward Bryan S., stating "What the fuck are you on?" (*Id.* ¶ 21.) Trooper Jackson directed Bryan S., who was still seated inside his vehicle with his seatbelt on, to undo his seatbelt and face towards

---

[1] The Court notes that some of the Complaint's allegations describe events that are not necessarily in chronological order and they fail to include certain salient facts, which make it difficult to comprehend how certain allegations occurred in relation to each other. Plaintiffs' response in opposition also fails to provide context on these allegations. The following compilation of facts is the result of the Court's reasonable attempt to figure out the logical temporal order that Plaintiffs may have originally intended.

him. (*Id.* ¶ 22.) Bryan S. complied while in excruciating pain. (*Id.* ¶ 23.) Trooper Jackson then demanded Bryan S. to tell him what medications he was taking and told him that he would not be going to the hospital but to jail until he submitted to blood tests. (*Id.* ¶ 25.) Trooper Jackson told Bryan S. that he was going to strap him down, take him to jail, and draw his blood against his wishes. (*Id.* ¶ 26.) Bryan S. informed Trooper Jackson that he was in significant pain and needed medical treatment. (*Id.* ¶ 18.)

When an ambulance arrived, rather than permitting its crew to assist Bryan S., Trooper Jackson directed Bryan S. to walk to the ambulance without any assistance. (*Id.* ¶ 20.) Throughout this encounter, Trooper Jackson told Jane Doe 1 that "she was going to learn how to 'do a [Correction Officer] today' and that it does not matter that [Bryan S.] is a Sergeant." (*Id.* ¶ 25.) Eventually, Trooper Jackson permitted the ambulance crew to transport Bryan S. to Danbury Hospital in Connecticut and followed them to that location. (*Id.* ¶¶ 27–28.)

> B.    *Bryan S. is hospitalized and his wife and mother visit him, but Trooper Jackson denies them access, and obtains and discloses Bryan S.'s medical information without his consent to the DOCCS*

At Danbury Hospital, Trooper Jackson denied Bryan S.'s wife, Bartholomew (who is an African-American female) access to Bryan S. by throwing her out of the hospital room where her husband was, and threatened her with arrest if she failed to comply with his orders. (*Id.* ¶¶ 28, 59.) Trooper Jackson did permit Bryan S.'s mother, Joyce S., to remain inside the hospital room with her son, but he did not permit her to speak to Bryan S. (*Id.* ¶ 29.) Trooper Jackson then interrogated Bartholomew, demanding she tell him what medication Bryan S. takes, when he took the medication, and whether he smokes marijuana (*Id.* ¶ 31.) Bartholomew told Trooper Jackson that she gave Bryan S. his required medications, but that she did not see him take his pain medication, and that he did not smoke marijuana. (*Id.* ¶¶ 30–31.)

Trooper Jackson continued to interrogate Bartholomew and Bryan S. and also obtained Bryan S.'s medical information without his consent. (*Id.* ¶ 33.) Trooper Jackson directed Bryan S.'s blood to be drawn against his will despite him writing NO on a consent form—a form which Trooper Jackson claims is now lost. (*Id.* ¶¶ 34.) Trooper Jackson later released Bryan S.'s medical information to the DOCCS, for which Bryan S. suffered negative repercussions from his employer. (*Id.* ¶ 39.) Trooper Jackson, who had previously worked at DOCCS, also called Bryan S.'s supervisor, Lieutenant Michael Harvey (the acting watch commander), and falsely informed him that Bryan S. had admitted to smoking marijuana, causing negative repercussions for Bryan S. with DOCCS. (*Id.* ¶ 49.)

    C.    *Trooper Jackson arrests and charges Bryan S. for violations of traffic law; Bryan S. is criminally prosecuted*

Trooper Jackson then arrested Bryan S. and charged him with violating New York Vehicle and Traffic Law §§ 1192(4) (driving while impaired by drugs), 1129(a) (following too closely) and 600.01(A) (leaving the scene of an accident), despite knowing said charges to be false. (*Id.* ¶ 40.) Trooper Jackson told Bryan S. to show up at the Trooper Barracks by 6:00 p.m. because he would start his vacation at 6:00 p.m., and if Bryan S. "fucks up" his vacation, he would charge Bryan S. with felonies instead of misdemeanors, drag him to jail, and make him wait a week to bail out. (*Id* ¶ 41.) Hospital staff advised Bryan S. to remain in the hospital because he could have a spine fracture, but Bryan S. still signed out in fear of retribution by Trooper Jackson. (*Id.* ¶¶ 42–43.) Bryan S. also suffered an additional seizure while at the hospital in the presence of medical staff. (*Id.* ¶ 44.) Bryan S. immediately returned to the hospital (presumably after meeting Trooper Jackson) after the staff informed him that he was at risk of paralysis because he suffered a compression fracture of his spine, a concussion, and bruising to his shoulder, chest, and ribs as a result of the accident. (*Id.* ¶ 45.)

Bryan S. was subsequently criminally prosecuted for the charges Trooper Jackson pressed, which he knew to be false. (*Id.* at 7.)[2] During the criminal prosecution, Trooper Jackson claimed to have lost the dash cam evidence with footage of the scene of the accident and encounter between him and Bryan S. When the dash cam was later found, the footage depicting the encounter between the two had been deleted, as well as Trooper Jackson's conduct towards Bryan S. (*Id.* ¶ 47.) Trooper Jackson also erased the name of the off-duty New York City Detective from the official police reports, although this information was later recovered. (*Id.*) All criminal charges against Bryan S. were subsequently dismissed and sealed. (*Id.* ¶ 48.)

## II. Procedural Background

On August 24, 2020, Plaintiffs filed the instant Complaint (Compl., ECF No. 1.) After they were served with the Complaint and summons, on January 14, 2021, Defendants sought leave to file a motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 19 & 20.) On April 15, 2021, the parties filed their respective briefing on the instant motion: Defendants their notice of motion (ECF No. 21), memorandum in support ("Motion," ECF No. 22), and reply ("Reply," ECF No. 23); and Plaintiffs their response in opposition ("Response in Opposition," ECF No. 25) and a declaration with accompanying exhibits (Gambino Decl., ECF No. 26).[3]

---

[2] To avoid confusion, the Court cites to the Complaint's page here because Plaintiffs' Complaint contains two paragraphs numbered "45."

[3] Plaintiffs also filed a notice of motion to amend or correct their complaint. (ECF No. 24.) They included a paragraph in their Response in Opposition asking for leave to amend should the Court is inclined to dismiss upon the pleadings. (Resp. in Opp'n at 20.) But Plaintiffs' briefing on their motion to amend is procedurally deficient because they failed to comply with Rule 3(A)(ii) of this Court's Individual Practices by not filing a pre-motion letter seeking conference before filing their motion.

**LEGAL STANDARD**

### I.      Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) (citing Fed. R. Civ. P. 12(b)(1)). "Once challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction." *Augienello v. F.D.I.C.,* 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004) (Sweet, J.) (internal citations omitted).

"On a motion to dismiss for lack of subject matter jurisdiction, the court may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings" such as affidavits or other evidence. *Id.* at 588 (citing *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986)). "[C]ourts must accept as true all material factual allegations in the complaint" and "refrain from drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Fox v. Commonw. Worldwide Chauffeured Transp. of NY, LLC,* No. 08–CV–1686, 2009 WL 1813230, at *1 (E.D.N.Y. June 25, 2009) (Garaufis, J.) (internal quotation marks and citations omitted).

### II.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic

6

recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiffs assert claims under federal law against Trooper Jackson and Jane Doe 1 for (1) violation of their rights under the First and Fourteenth Amendments to freely associate with others; (2) violation of Bryan S.'s Fourth Amendment right to be free from excessive force; and (3) false arrest and imprisonment, and malicious prosecution of Bryan S. (*See* Compl. at 11–13.) Plaintiffs also assert federal claims—premised on Trooper Jackson and Jane Doe 1's alleged violations of their constitutional rights—against the remaining Defendants for (1) conspiracy under § 1983; (2) conspiracy under § 1985(3);[4] and (3) supervisory liability and failure to intercede. (*See id.* at 10–14.) Plaintiffs also assert state common law claims against all Defendants for (1) gross negligence, negligence, and intentional and negligent infliction of emotional distress; (2) *respondeat superior*; (3) assault and battery; (4) false arrest and false imprisonment; (5) *prima facie* tort; (6) negligent hiring and supervision; and (7) libel and slander. (*See id.* at 14–20.)

Defendants seek to dismiss all claims arguing that: (1) the Court lacks subject matter jurisdiction over all claims against the State of New York, the New York State Police, and individual defendants in their official capacity because the Eleventh Amendment and sovereign immunity bars all such claims; (2) Plaintiffs fail to allege personal involvement of Superintendent

---

[4] None of the allegations in Plaintiff's Complaint seem to invoke § 1985(1) and (2) because they relate to conspiracy claims to prevent officers from performing their duties and to obstruct judicial proceedings by intimidating a party, witness, or juror.

Beach; (3) Plaintiffs' federal claims fail as a matter of law on several grounds; (4) Superintendent

Beach and Trooper Jackson are entitled to qualified immunity; (5) Plaintiffs' state law claims fail

as a matter of law on several grounds; and (6) Superintendent Beach and Trooper Jackson are

immune from state tort claims because they are being sued for actions that are discretionary in

nature. (*See* Mot. at 13–30.) The Court analyzes Defendants' arguments in that order.

### I.   The Eleventh Amendment and sovereign immunity bars all of Plaintiffs' claims against the State of New York, the New York State Police, and individual defendants in their official capacity

As a preliminary matter, the Court agrees with Defendants that it lacks subject matter

jurisdiction over all of Plaintiffs' claims against the State of New York, the New York State Police,

and the individual defendants in their official capacity because the Eleventh Amendment and

sovereign immunity bar such damages claims. (Mot. at 13–14.) Indeed, Plaintiffs concede that

these claims must be dismissed. (Resp. in Opp'n at 10.)

The Eleventh Amendment jurisdictionally bars from federal court all suits by private

parties against a state or one of its agencies unless the state consents to such suit or Congress has

expressly abrogated the state's immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465

U.S. 89, 100–02 (1984). Congress did not abrogate states' immunity when it enacted §§ 1981,

1983, 1985, 1986. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 343–45 (1979) (§ 1983); *Daisernia v.

State of New York,* 582 F. Supp. 792, 800, 803 (N.D.N.Y. 1984) (§ 1981); *True v. New York State

Dep't of Corr. Servs.,* 613 F. Supp. 27, 31 (W.D.N.Y. 1984) (§ 1985); *Seibert v. Oklahoma*, 867

F.2d 591, 594 (10th Cir. 1989) (§ 1986), *abrogated on other grounds by Federal Lands Legal

Consort, ex rel. Robart Estate v. United States* 195 F.3d 1190 (10th Cir. 1999). The State of New

York has also not consented to suit in federal court under either § 1983, *see Le Grand v. Evan,* 702

F.2d 415, 417 (2d Cir. 1983), § 1981, *see Quirk v. City of New York,* No. 03 Civ. 0324, 2003 WL

1872714, at *1 (S.D.N.Y. Apr. 10, 2003), § 1985, *see id.*, or § 1986, *see Gasparik v. Stony Brook University,* No. CV-05-3817, 2007 WL 2026612, at *4 (E.D.N.Y. July 9, 2007).

The immunity provided by the Eleventh Amendment extends to actions seeking damages against state officials sued in their official capacities if the state is the real party in interest. *See Davis v. New York,* 316 F.3d 93, 101 (2d Cir. 2002); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir. 1988).

Accordingly, the Court dismisses all of Plaintiffs' federal and state law claims against the State of New York, the New York State Police, and individual defendants in their official capacity with prejudice.

## II.   Plaintiffs' conspiracy claims fail because Defendants are legally incapable of conspiring together under the intracorporate conspiracy doctrine

Next, the Court agrees with Defendants that Plaintiffs' conspiracy claims under §§ 1983 and 1985 against the individual Defendants (Superintendent Beach, Trooper Jackson, and John Does 1-4), in their individual capacities, fail because they are barred by the intracorporate conspiracy doctrine. (Mot. at 15.)

"Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together." *Little v. City of New York*, 487 F. Supp. 2d 426, 442–43 (S.D.N.Y. 2007) (quoting *Salgado v. City of New York*, No. 00 Civ. 3667(RWS), 2001 WL 290051, at *8–9 (S.D.N.Y. March 26, 2001) (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978); *Girard v. 94th St. and Fifth Ave. Corp.*, 530 F.2d 66, 71–72 (2d Cir. 1976))). An exception to this doctrine exists where the individuals are "motivated by an independent personal stake in achieving the corporation's objective." *Id.* (quoting *Salgado*, 2001 WL 290051, at *8.)

Here, Plaintiffs formulaically allege that the individual Defendants conspired with each other to violate their rights under both §§ 1983 and 1985, (*see* Compl. ¶¶ 61–64, 81–83), and that the individual Defendants are part of a single corporate entity: the New York State Police. (*See id.* ¶¶ 4, 8.) Moreover, nowhere in the Complaint do Plaintiffs allege "that [any] of the officers were motivated by an independent personal stake" in carrying out the alleged conspiracy of the violation of their rights. *Little*, 487 F. Supp. 2d at 443.

Accordingly, the Court dismisses all of Plaintiffs' conspiracy claims against Superintendent Beach, Trooper Jackson, and John Does 1-4 without prejudice.

### III. Plaintiffs fail to allege the personal involvement of Superintendent Beach and John Does 2-4

Next, the Court agrees with Defendants that Plaintiffs' claims against Superintendent Beach are insufficiently pled for failure to allege his personal involvement in any of their asserted claims. (Mot. at 14.) The Court is also of the view that Plaintiffs' claims against John Does 2-4 fail for similar reasons.

"A defendant in a § 1983 action may not be held responsible unless he was personally involved in the alleged constitutional violations." *Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000). "The Second Circuit has held that 'personal involvement' for these purposes means 'direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.'" *Id.* (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).

Here, the majority of Plaintiffs' allegations relating to each of their federal causes of action hastily attribute the violations of Plaintiffs' rights to all "Defendants" despite Plaintiffs' initial factual allegations averring only the personal involvement of Trooper Jackson, and at best, also that of Jane Doe 1—who was allegedly present during the incidents with Plaintiffs. (*Compare*

Compl. ¶ 19 ("Trooper Kyle Jackson . . . violently shook [Bryan S.] and slapped him in the face.") *and id.* ¶ 28 ("Trooper Kyle Jackson . . . threw . . . [Bartholomew], who is African-American, out of [Bryan S.'s] hospital room, denying them access to each other and threatened her with arrest if she failed to comply with his order.") *with id.* ¶ 67 ("The conduct of the *Defendants* toward Plaintiff constituted assault and battery on the person of the Plaintiff by *Defendants*." (emphasis added)) *and id.* ¶78 ("By their conduct and under color of law, federal and state, *Defendants* deprived [Bartholomew] of her First and Fourteenth Amendment rights to freely associate with others." (emphasis added)).

Further, regarding those claims against Superintendent Beach, Plaintiffs merely conclusorily allege that, as the Superintendent of the New York State Police, he implemented the policies and practices and supervised the actions of the subordinate officers. (Compl. ¶¶ 11, 12, 57, 58.) "Absent further factual enhancement, simply stating that [Superintendent Beach] created unidentified policies or practices" and supervised actions of his subordinate officers are "not enough to defeat a Rule 12(b)(6) motion." *Casiano v. Cnty. of Nassau*, No. CV161194SJFARL, 2019 WL 487868, at *7 (E.D.N.Y. Jan. 7, 2019), *report and recommendation adopted*, No. 16CV1194SJFARL, 2019 WL 337098 (E.D.N.Y. Jan. 28, 2019); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in liability where an officer observed excessive force is being used or has reason to know that it will be." (citations omitted)); *Lindsey v. Butler*, 43 F. Supp. 3d 317, 330 (S.D.N.Y. 2014), *reconsideration granted on other grounds*, 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014) ("In order to hold supervisors liable for creating a custom or policy fostering a constitutional violation, courts in this Circuit have required that plaintiffs plead more than conclusory allegations of the existence of the custom or policy." (citing cases)).

Additionally, Plaintiffs' federal claims against John Does 2-4 are similarly insufficient because all that Plaintiffs allege is that Trooper Jackson's actions "were supervised by supervisors of the New York State Police identified as John Does 2-4" and that they "knew or should have known that the allegations" leading to Bryan S.'s arrest were false and not based on probable cause. (Compl. ¶¶ 50–51); *see also Gray-Davis v. New York*, No. 5:14-CV-1490 GTS/TWD, 2015 WL 2120518, at *8 (N.D.N.Y. May 5, 2015) (dismissing supervisory liability claim against John Doe defendant because plaintiff failed to sufficiently allege personal involvement).

Accordingly, the Court dismisses all of Plaintiffs' federal claims against Superintendent Beach and John Does 2-4 without prejudice.

**IV. Plaintiffs' remaining federal claims against Trooper Jackson and Jane Doe 1 fail**

The only federal claims remaining are Plaintiffs' claims against Trooper Jackson and Jane Doe 1, including: (1) for violation of Bryan S.'s Fourth Amendment right to be free from excessive force; (2) for Bryan S.'s false arrest, false imprisonment, and malicious prosecution; (3) for violation of Plaintiffs' First and Fourteenth Amendments right to association; and (4) those purportedly asserted under §§ 1981 and 1986. The Court addresses these claims in that order.

*A.    Plaintiffs' excessive force claim fails because they fail to sufficiently allege that the force used was either not de minimis or objectively unreasonable*

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121,

127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

Here, the main dispute between the parties involves only the first element: whether there was a deprivation of a constitutional right. Plaintiffs allege that Trooper Jackson violated Bryan S.'s Fourth Amendment right to be free of excessive force by "violently [shaking] and slapp[ing]" him right after Bryan S. had his seizure that resulted in a car accident. (Compl. ¶ 19.) Defendants contend that Plaintiffs' excessive force claim fails because they fail to allege that Trooper Jackson used more than *de minimis* force and that his use of force was objectively unreasonable under the circumstances. (Mot. at 17.) After due consideration, the Court agrees with Defendants.

As a preliminary matter, the Court notes that the relevant allegations here strongly suggest that Trooper Jackson suspected that Bryan S. was driving under the influence, and was seeking to seize him until he could confirm his suspicions. (*See, e.g.*, Compl. ¶¶ 21, 25 (alleging that Trooper Jackson asked Bryan S. whether he took any medications and also: "What the fuck are you on?"); *id.* ¶ 25 (alleging that Trooper Jackson told Bryan S. that he would take him to jail and not the hospital until he submitted to blood tests).) Therefore, based on these allegations, Trooper Jackson's use of force during the course of this encounter must be analyzed under the Fourth Amendment and its "reasonableness standard." *See Graham v. Connor,* 490 U.S. 386, 395 (1989).

The Fourth Amendment's reasonableness standard requires "balancing . . . 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Dancy v. McGinley*, 843 F.3d 93, 116 (2d. Cir. 2016) (quoting

*Graham*, 490 U.S. at 395–96). A police officer's use of force is excessive "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham* 490 U.S. at 397).

Factors relevant to this inquiry include:

the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001)).

"[I]t is . . . well established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional rights." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 797 (S.D.N.Y. 2021) (quoting *Mesa v. City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (cleaned up)). However, "[i]t is the force used, not the injuries caused, which must be determined to be *de minimis* as a matter of law." *Jackson v. Mastrangelo*, 405 F. Supp. 3d 488, 492 (W.D.N.Y. 2019) (quoting *Campbell v. City of New York*, No. 06-CV-5743, 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010)).

Here, even when construing the Complaint in the light most favorable to them, Plaintiffs fail to sufficiently allege that Trooper Jackson used more than *de minimis* force and that such force was unreasonable under the circumstances. Specifically, the Complaint's allegations relating to Plaintiffs' excessive force claim omit certain salient facts material to the reasonableness analysis, and they also describe events that are not necessarily in chronological order. Hence, these deficiencies in the Complaint make it difficult for the Court to discern how certain allegations occurred in relation to each other.

For example, in relevant part, Plaintiffs allege that upon Trooper Jackson's arrival at the scene, an off-duty New York City Police Detective at the scene informed him that Bryan S. "was having a seizure"—that is, *in the middle of* a seizure episode *at the same time* the detective and Trooper Jackson were talking. (Compl. ¶ 17.) But Plaintiffs' next allegation is that Bryan S. informed Trooper Jackson "that he was in significant pain and needed medical treatment." (*Id.* ¶ 18.) Viewed together, these allegations inconclusively suggest three possible alternative scenarios, that (a) Bryan S. was conscious and could still communicate while suffering a seizure; (b) some undefined time passed between Bryan S.'s seizure and him regaining his ability to communicate; or (c) Bryan S. informed Trooper Jackson that he was in significant pain and needed medical treatment at some other point in time during the encounter. Yet, Plaintiffs do not provide sufficient context in either the remaining allegations or their response in opposition to make clear what they intended to allege.[5]

This omitted context is important because Plaintiffs' next allegation is the one at issue here: that Trooper Jackson shook and slapped Bryan S. As the reasonableness standard requires the Court to analyze whether the force used was reasonable *under the circumstances alleged*, without any clarifying allegations as to the timing of alleged force used in relation to Bryan S.'s seizure and him regaining the ability to communicate, the Court is unable to conduct the analysis because the circumstances are a matter of speculation. Indeed, Plaintiffs also crucially fail to allege or clarify whether the forced used caused Bryan S. any injury[6] or even the number of times that

---

[5] In another instance, Plaintiffs allege that Trooper Jackson told Jane Doe 1 that "she was going to learn how to 'do a [Correction Officer] today' and that it does not matter that Bryan S. is a sergeant." (*Id.* ¶ 24.) But nowhere in their previous allegations did Plaintiffs allege when or how Trooper Jackson found out about Bryan S.'s identity, employment, and rank at the DOCCS.

[6] In their response in opposition, Plaintiffs impliedly contend that Bryan S. suffered injuries as a result of Trooper Jackson denying him immediate medical assistance, preventing the ambulance crew from helping him, and requiring him to walk to the ambulance. (Resp. in Opp'n at 13–14.) However, Plaintiffs

Trooper Jackson slapped Bryan S., both of which are material circumstances on which the reasonableness analysis could turn decisively.

To illustrate, in considering the different scenarios that the allegations mentioned above suggest, the results of the reasonableness inquiry vary. In the first scenario, if Trooper Jackson shook and slapped Bryan S. *multiple times* while he was conscious and able to communicate while in the middle of a seizure, then the force used can neither be *de minimis* nor reasonable because Bryan S. was restrained in his car, not resisting, and in "significant pain and in need of medical assistance." *See, e.g.*, *Campbell v. City of New York*, No. 06 CV 5743 (HB), 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010) ("The alleged force used on Campbell when he was being interrogated at the police station, slapping and cigarette burns, in particular cannot conceivably be deemed a *de minimis* use of force if it in fact occurred."); *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 391 (S.D.N.Y. 2009) ("[W]e do not believe that any particular quantum of physical injury is required in such circumstances, since the evidence demonstrates that no use of force was justified. That is the scenario here, which involved an interrogation of an unresisting previously-arrested individual.").

Of course, the result would be the opposite if Trooper Jackson only slapped Bryan S. *once* and resulted in no injury because then the force used would be *de minimis*. *See Lewis v. Huebner*, No. 17-CV-8101 (KMK), 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020) ("Courts have repeatedly held that a single slap that results in no injury constitutes unactionable, *de minimis* force." (collecting cases)).

---

neither explicitly include these allegations in their Complaint, nor can the Court draw reasonable inferences alluding the same from Plaintiffs' allegations. But above all, "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.,* 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005).

On the other hand, in the second and third scenarios, if Trooper Jackson shook and slapped Bryan S. while he was still suffering a seizure *but before* he had regained his ability to communicate, then, even when construing the allegations in Plaintiffs' favor, the force used would plausibly be reasonable. Notably, given that Trooper Jackson suspected that Bryan S. was driving under the influence, it follows that the allegations would suggest that he ostensibly used such force to assess Bryan S.'s sobriety or consciousness. But even then, Trooper Jackson's force could still be unreasonable depending on whether he slapped Bryan S. *multiple times* and such force resulted in an injury.

To be sure, for purposes of this motion, the Court recognizes that it must accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *Freidus,* 734 F.3d at 137. However, "the [C]ourt cannot simply 'fill in the blanks' to supply what is missing, on a motion to dismiss," *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 357 (W.D.N.Y. 2018), "or follow a bread crumb trail of a represented plaintiff." *Jackson v. Cnty. of Onondaga*, No. 917CV845GLSCFH, 2019 WL 355729, at *4 (N.D.N.Y. Jan. 28, 2019). Put differently, at this stage, the Court is not required to either speculate or puzzle out Plaintiffs' allegations in such a way that the Court would be effectively pleading Plaintiffs' claim for them.

And moreover, the Court notes that Plaintiffs also fail to allege how Jane Doe 1, who was allegedly present at the scene with Trooper Jackson, was personally involved in the violation of Bryan S.'s right to be free of excessive force. *See Jeffreys v. Rossi,* 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ("A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." (citing *Ricciuti v. New York City*

17

*Transit Auth.,* 124 F.3d 123, 129 (2d Cir. 1997); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994)). In fact, even if Plaintiffs had sufficiently alleged that Trooper Jackson used excessive force, they would still fail to sufficiently allege a claim against Jane Doe 1 for her failure to intercede because the Complaint contains no allegations that she had "a reasonable opportunity to do so." *Id.*

Accordingly, the Court dismisses all of Plaintiffs' claims for the alleged violation of Bryan S.'s Fourth Amendment right to be free from excessive claim without prejudice.

> **B.    Plaintiffs fail to allege a claim for false arrest, false imprisonment, and malicious prosecution as a matter of law because the allegations suggest Trooper Jackson had probable cause**

### 1.    False arrest and false imprisonment

Because "[f]alse arrest is considered a kind of false imprisonment, . . .  the claims are analyzed in identical fashion. *See Mitchell v. Home*, 377 F.Supp.2d 361, 371 (S.D.N.Y. 2005) (citing *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) (describing false arrest claim as type of false imprisonment claim and stating that claims are analyzed identically), *cert. denied,* 517 U.S. 1189 (1996); *Weyant v. Okst,* 101 F.3d 845, 853 (2d Cir. 1996) (quoting *Singer*)).

"To establish a claim for false arrest under  1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant*, 101 F.3d at 852). A plaintiff cannot prevail on a false arrest claim if the arresting officer had probable cause to arrest. *See Singer*, 63 F.3d at 118.

Probable cause exists if officers have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation omitted). "Probable cause does not require absolute certainty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). Indeed, "some exculpatory evidence does not make an arrest illegal

when the totality of evidence still establishes probable cause to believe that the suspect committed the crime." *Stansbury v. Wertman*, 721 F.3d 84, 94 (2d Cir. 2013).

To defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). As long as there was probable cause to arrest the plaintiff for *some* offense, a false arrest claim will fail. *See Jaegly*, 439 F.3d at 152. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Here, Plaintiffs allege that Trooper Jackson arrested Bryan S. for violating New York Vehicle and Traffic Law §§ 1192(4) (driving while impaired by drugs), 1129(a) (following too closely) and 600.01(A) (leaving the scene of an accident), "despite knowing said charges to be false." (Compl. ¶ 40.) Based on Plaintiffs' placement of this allegation within the Complaint, Trooper Jackson presumably arrested Bryan S. *after* he was hospitalized, his blood drawn from him, and Trooper Jackson obtained his medical information. (*See id.* ¶¶ 34–40.)

As a result, after due consideration, the Court agrees with Defendants that, even when viewing the Complaint in Plaintiffs' favor, the allegations suggest that Trooper Jackson had probable cause to arrest Bryan S. for violating New York Vehicle and Traffic Law § 1192(4) (driving while impaired by drugs). First, the Complaint alleges that Trooper Jackson asked Bartholomew whether her husband, Bryan S., takes medication and when. (*See id.* ¶ 30.) Bartholomew responded that she had given Bryan S. his required medication, but that she did not see him take his pain medication. (*See id.* ¶ 31.) Further, the Complaint alleges that Trooper

Jackson arrested Bryan S. *after* he learned of his medical information and had his blood drawn. (*See id.* ¶¶ 34–40.) In sum, it can be inferred from these allegations that Trooper Jackson developed probable cause that Bryan S. was driving under the influence due to the medications he had taken earlier and the results of his blood tests. Additionally, that the criminal charges against Bryan S. were eventually dismissed and sealed has no bearing on the issue of whether Trooper Jackson had probable cause to effectuate the arrest. *See Quinn v. City of New York*, No. 99 Civ. 7068, 2003 WL 1090205, at *4 (E.D.N.Y. Mar. 12, 2003) ("The validity of an arrest does not depend on a finding of innocence or any other disposition." (citing *Haussman v. Fergus*, 894 F. Supp. 142, 147–48 (S.D.N.Y. 1995)).

Accordingly, the Court dismisses all of Plaintiffs' claims for false arrest and imprisonment against Trooper Jackson without prejudice. The Court also dismisses those same claims against Jane Doe 1, who Plaintiffs once again fail to allege how she was personally involved in Bryan S.'s arrest.

2.   Malicious prosecution

The elements of a malicious prosecution claim under § 1983 are that: (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; (4) the prosecution terminated in the plaintiff's favor; and (5) there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights. *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Singer*, 63 F.3d at 116–17 (relying in part on common law and New York State malicious prosecution law in analyzing § 1983 malicious prosecution claim, and observing that "[t]he 'appropriate starting point' of the inquiry is the common law of torts" (quoting *Carey v. Piphus*, 435 U.S. 247, 258 (1978))).

Here, Plaintiffs' malicious prosecution claim under § 1983 against Trooper Jackson and Jane Doe 1 fails because, even when construing the Complaint in the light most favorable to Plaintiffs, the allegations indicate that Trooper Jackson had probable cause to arrest Bryan S., as discussed above.

Furthermore, while police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to "play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v. City of New York,* 612 F.3d 149, 163 (2d Cir. 2010) (quoting *Rohman,* 215 F.3d at 217). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Bermudez v. City of New York,* 790 F.3d 368, 377 (2d Cir. 2015) (citing *Manganiello,* 612 F.3d at 163). However, Plaintiffs allege no facts indicating that either Trooper Jackson or Jane Doe 1 played an active role in the subsequent prosecution of Bryan S.

Accordingly, the Court dismisses Plaintiffs' malicious prosecution claim under § 1983 against Trooper Jackson and Jane Doe 1 without prejudice.

C.    *Plaintiffs' claims for the violation of their rights under the First and Fourth Amendments fail because the allegations suggest the temporary separation was not shocking, arbitrary, and egregious*

Plaintiffs next claim that Trooper Jackson interfered with their familial association when Bryan S. was hospitalized and he refused to allow Bartholomew and Joyce S. be present during Bryan S.'s questioning. (Compl. ¶¶ 28–29.) But Defendants argue that such claim is meritless because, for the claim to be viable, the interference with their familial association must be "shocking, arbitrary, and egregious." (Resp. in Opp'n at 21–22.) The Court agrees.

The Second Circuit has held that relatives maintain, "in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state." *Anthony v. City of New York*, 339 F.3d 129, 142–43 (2d Cir. 2003). To prevail on a claim for violation of the substantive due process right of familial association, a plaintiff "must demonstrate that [the alleged offending act] was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* at 143 (internal citation and quotations omitted) (holding that a woman's temporary separation from her sister due to involuntary confinement at hospital did not violate her sister's substantive due process right to familial association).

To rise to a "conscience-shocking level," the misconduct alleged in a substantive due process claim must be either conduct intended to injure in some way unjustified by any governmental interest, or inflicted with deliberate indifference that was shocking under the circumstances. *Miner v. New York State Dep't of Health,* No. 02 Civ. 3180, 2004 WL 1152491, at *5 (S.D.N.Y. May 24, 2004) (finding the lack of deliberate indifference fatal to the familial association claim of an inmate whose wife filed for divorce after receiving an inaccurate letter notifying her that her husband was HIV positive).

Here, Plaintiffs fail to allege how Trooper Jackson's interference with their familial association was "conscience-shocking"; much less, how such interference could even be considered misconduct because Trooper Jackson was investigating a car accident involving a compromised or inebriated driver, which is a violation of New York Vehicle and Traffic Law. *See, e.g.*, *People v. DeJesus*, 845 N.Y.S.2d 517, 518 (3d Dep't 2007) ("It is now well established that the police are not required to provide a defendant access to a family member who is present at police headquarters during interrogation." (citations omitted)).

Accordingly, the Court dismisses all of Plaintiffs' claims against Trooper Jackson for interference with their familial association without prejudice. The Court also dismisses those same claims against Jane Doe 1, who Plaintiffs once again fail to allege how she was personally involved in the event.

### D.     Plaintiffs' claims under §§ 1981 and 1986 fail

Lastly, Plaintiffs' Complaint purports to assert claims under §§ 1981 and 1986. (*See* Compl. ¶ 1.) But with respect to their § 1981 claims, none of Plaintiffs' allegations invoke a claim under that statute. *See Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (noting that § 1981 "was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." (internal quotation marks and citations omitted)). And as the Court concluded above that Plaintiffs' § 1985 claims fail, then their claims under § 1986 must also fail because "a § 1986 claim must be predicated upon a valid § 1985 claim." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (citations omitted).

In sum, as all of Plaintiffs' federal claims against Defendants fail, the Court need not address Defendants' arguments on qualified immunity. And on that same basis, the Court also declines to exercise supplemental jurisdiction over Plaintiffs' state law claims because there remains no independent jurisdictional basis. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"). Additionally, where the federal claims

are dismissed at an early stage in the litigation, the Second Circuit has generally held that it is inappropriate for the district court to exercise supplemental jurisdiction. *See, e.g., Giordano,* 274 F.3d at 754; *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir. 1998); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir. 1991).

Therefore, the Court dismisses the entirety of Plaintiff's Complaint.[7]

---

[7] As noted above, Plaintiffs also filed a notice of motion to amend or correct their complaint that failed to comply with Rule 3(A)(ii) of this Court's Individual Practices. (ECF No. 24.) While the Court denies the motion to amend as procedurally deficient, the Court nonetheless grants Plaintiffs' leave to file an amended complaint. *See Cotiviti, Inc. v. Deagle*, No. 20-CV-02730, 2020 WL 6806434, at *13 (S.D.N.Y. Nov. 19, 2020) (explaining that *sua sponte* leave to amend is appropriate "when justice so requires" (quoting Fed. R. Civ. P. 15(a)(2))).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss (ECF No. 21) and DISMISSES Plaintiffs' Complaint. Specifically, the Court DISMISSES Plaintiffs' federal and state law claims against New York State, the New York State Police, and all individual defendants in their official capacities with prejudice, and all other remaining federal and state law claims against the individual defendants in their individual capacities without prejudice. Plaintiffs are granted leave to file an Amended Complaint as to those claims that were dismissed without prejudice. If Plaintiffs choose to do so, they will have until May 20, 2022, to file an Amended Complaint. Defendants are then directed to answer or otherwise respond by June 20, 2022. If Plaintiffs fail to file an Amended Complaint within the time allowed, and they cannot show good cause to excuse such failure, any claims dismissed without prejudice by this opinion and order may be deemed dismissed with prejudice. The Clerk of Court is directed to terminate the motions at ECF Nos. 21 and 24.

Dated:  March 24, 2022
       White Plains, NY

SO ORDERED:

_____

NELSON S. ROMÁN
United States District Judge