UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/13/2023_
```

BRYAN SWANHART,

                              Plaintiff,

        -against-

TROOPER KYLE JACKSON, SHIELD #2795,
sued in his individual capacity; CAPTAIN PAUL
ARTUZ, sued in his individual capacity;
LIEUTENANT MICHAEL HARVEY, sued in his
individual capacity and JOHN DOE OFFICERS 1-5
(Their True Names and Identities Presently
Unknown), sued in their individual capacities,

                              Defendants.

No. 20 Civ. 6819 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Bryan Swanhart ("Bryan S." or "Plaintiff") brings this action under 42 U.S.C. §§ 1983, 1985, and 1986, and state common law, asserting, *inter alia*, multiple civil rights violations. (*See* Compl.) Bryan S. alleges that on September 1, 2027, he was involved a car accident after suffering a seizure. (*See* Compl. at 3.) Instead of rendering medical assistance, the responding New York State trooper allegedly (i) shook and slapped him; (ii) had his blood drawn against his consent and released his medical information to his employer; (iii) falsely arrested and charged him for driving while impaired, following too closely, and leaving the scene of the crime; (iv) denied him access to his wife, Bartholomew, and his mother, Joyce S. while hospitalized; and (v) tampered with evidence during his subsequent criminal prosecution. (*See* Compl. at 1–13, ECF No. 33.) Plaintiff sues Defendants Trooper Kyle Jackson ("Trooper Jackson"), Captain Paul Artuz ("Captain Artuz"), Lieutenant Michael Harvey ("Lieutenant Harvey"), and John Doe Officers 1-5 (collectively, "Defendants"), asserting federal claims for violations of his constitutional rights, as

well as an assortment of state common law claims arising from the conduct allegedly underlying these violations. (*See id.* at 13–22.)

Presently pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and (6) (the "Motion"). (ECF No. 46.) For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.   Procedural Background

Plaintiff commenced this action on or about August 24, 2020, against New York State and various employees and officers of the New York State Police ("NYSP"). (Compl., ECF No. 1.) On April 15, 2021, the named defendants moved to dismiss Plaintiff's original Complaint. (ECF No. 21). By Opinion and Order, dated March 24, 2022, the Court dismissed with prejudice Plaintiffs' federal and state law claims against New York State, the New York State Police, and all individual named defendants in their official capacities, and dismissed without prejudice all other remaining federal and state law claims against the individual defendants in their individual capacities. (ECF No. 27.) Plaintiff filed an Amended Complaint on May 29, 2022 (ECF No. 28.)  and on June 28, 2022, filed a "Corrected First Amended Complaint." (ECF No. 33). The Corrected First Amended Complaint, hereinafter referred to as the Amended Complaint ("Am. Compl.") is the operative complaint.

On October 19, 2022, Defendants sought leave to file a motion to dismiss the Am. Compl., which the Court subsequently granted. (ECF No. 45.) Defendants filed their notice of motion (ECF No. 46), accompanying memorandum in support ("Def. Mem.," ECF No. 47), and reply ("Reply," ECF No. 50) on January 20, 2023. Contemporaneously, Plaintiff filed his memorandum in

opposition ("Response in Opp.," ECF No. 48) and declaration with accompanying exhibits. ("Gambino Decl.," ECF No. 49.)

## II.  Factual Background

The following facts are derived from Am. Compl. and are taken as true and construed in the light most favorable to Plaintiff for the purposes of this motion.[1]

### A.  *Bryan S. had a car accident after suffering a seizure; Trooper Jackson responded to the scene and did not provide medical assistance*

On September 1, 2017, Bryan S., a sergeant for the New York Department of Corrections and Community Supervision ("DOCCS"), had a car accident on 1360 Route 22, Southeast, New York, after suffering a seizure while driving his vehicle. (Am. Compl. ¶¶ 9–10, 13.) Troopers Jackson and Jane Doe 1 responded to the scene. (*Id.* ¶ 11). Trooper Jackson, who had previously worked at DOCCS at the same time as Bryan S., held an animus toward him and vowed to "get even" as a result of this animus. (*Id.* ¶¶ 13–14.) Upon arriving at the scene, an unidentified off-duty police detective was already present at the scene and informed the troopers that Bryan S. had a seizure, which was determined by Defendants while at the accident scene to be true. (*Id.* ¶ 15.)

Rather than addressing Bryan S.'s medical needs, Trooper Jackson allegedly shook him, slapped him in the face multiple times, and struck him about the head and body in an effort to "get even" with him. (*Id.* ¶¶ 18, 22.) Trooper Jackson repeatedly and continuously yelled profanities toward Bryan S., stating, "What the fuck are you on?" (*Id.* ¶ 20.) Trooper Jackson directed Bryan S., who was conscious, aware of his surroundings, pleading for help and still seated

---

[1] The Court notes that some of the allegations in Am. Compl. describe events that are not necessarily in chronological order, which makes it difficult to comprehend how certain incidents occurred in relation to each other. Plaintiff's response in opposition also fails to provide context on these allegations. The following compilation of facts is the result of the Court's reasonable attempt to determine the logical temporal order that Plaintiff may have originally intended.

inside his vehicle with his seatbelt on, to undo his seatbelt and turn to face towards him. (*Id.* ¶ 21.) Bryan S. complied despite being in excruciating pain, thereby causing himself further injury. (*Id.* ¶ 24.) Trooper Jackson then demanded Bryan S. to tell him what medications he was taking and told him that he would strap Bryan S. down, take him to jail, and draw his blood against his wishes unless he submitted to blood tests. (*Id.* ¶ 27.) Bryan S. responded that he was in significant pain and needed medical treatment. (*Id.* ¶ 16.)

When an ambulance arrived, Trooper Jackson directed Bryan S. to walk to the ambulance and did not permit the crew of the ambulance to assist Bryan S. (*Id.* ¶ 23.) Throughout this encounter, Trooper Jackson told Jane Doe 1 that "she was going to learn how to 'do a [Correction Officer] today' and that it does not matter that [Bryan S.] is a Sergeant." (*Id.* ¶ 25.)  Eventually, Trooper Jackson permitted the ambulance crew to transport Bryan S. to Danbury Hospital in Connecticut and followed them to that location. (*Id.* ¶¶ 28–29.)

### B. *Bryan S. was hospitalized and his wife and mother visited him, but Trooper Jackson denied them access, as well as obtained and disclosed Bryan S.'s medical information without his consent to the DOCCS*

At Danbury hospital, Trooper Jackson denied Bryan S.'s wife, Bartholomew (who is an African-American female) access to Bryan S., allegedly because of her race; specifically, Trooper Jackson threw Bartholomew out of Bryan S.'s hospital room and threatened her with arrest if she failed to comply with his orders. (*Id.* ¶¶ 29, 77.) Although Trooper Jackson permitted Bryan S.'s mother, Joyce S., to remain in the hospital room with her son, he did not permit her to speak to Bryan S. (*Id.* ¶ 31.) Trooper Jackson then interrogated Bartholomew, demanding that she tell him what medication Bryan S. takes, when he had most recently taken the medication, and whether he smokes marijuana. (*Id.* ¶ 32.) Bartholomew told Trooper Jackson that she gave Bryan S. his required medications, but that she did not see him take his pain medication that day, and confirmed

that Bryan S. did not smoke marijuana. (*Id.* ¶¶ 32–33.) Additionally, Trooper Jackson obtained Bryan S.'s medical information without the consent of Bryan S. and directed Bryan S.'s blood to be drawn against his will. Regarding the forced withdrawal of Bryan S.'s blood, although Bryan S. alleges that he wrote "NO" on the applicable consent form, Trooper Jackson claims this form is now lost. (*Id.* ¶ 36.)

Additionally, Trooper Jackson contacted Bryan S.'s supervisors, Captain Arturo and Lieutenant Harvey, and allegedly told them that Bryan S. was under the influence of marijuana despite Bartholomew's confirmation that Bryan S. did not smoke marijuana. (*Id.* ¶ 43.) Trooper Jackson thereafter released Bryan S.'s medical information to the latter's employer, DOCCS. (*Id.* ¶ 44.) As a result of Trooper Jackson's release of Bryan S.'s medical information and providing of false information to the DOCCS, Bryan S. allegedly suffered negative repercussions from his employer. (*Id.* ¶ 44.)

### C. *Trooper Jackson arrested and charged Bryan S. for violations of traffic law; Bryan S. was criminally prosecuted*

Trooper Jackson arrested Bryan S. and charged him with violating New York State Vehicle and Traffic Law §§ 1192(04) (driving while impaired by drugs), 1129(0A) (following too closely) and 0600 (01A) (leaving the scene of an accident), despite purportedly knowing said charges to be false. (*Id.* ¶ 55.) Trooper Jackson justified Bryan S.'s arrest by claiming that Bryan S., while still undergoing medical care at Danbury Hospital, confessed to smoking marijuana at approximately 9:30 a.m. and consuming prescribed oxycodone at around 11:00 a.m. on the day of the accident. (*Id.* ¶ 38.) However, Bryan S. alleges that he never confessed to smoking marijuana or consuming prescribed oxycodone. (*Id.* ¶ 39.)

Following the arrest, Trooper Jackson told Bryan S. to show up at the Trooper Barracks by 6:00 p.m. because he would start his vacation at that time; he allegedly told Bryan S. that if Bryan

S. "fuck[ed] up" his vacation, he would charge Bryan S. with felonies instead of misdemeanors, drag him to jail, and make him wait a week before he could seek bail. (*Id.* ¶ 48.) Hospital staff advised Bryan S. to remain in the hospital because he could have a spine fracture, but he signed himself out for fear of retribution from Trooper Jackson. (*Id.* ¶¶ 49–50.) Further, Bryan S. suffered an additional seizure while at the hospital in the presence of medical staff. (*Id.* ¶ 51.)

Bryan S. was forced to return to Danbury Hospital the following day (presumably after meeting Trooper Jackson) after the staff informed him that he was at risk of paralysis because he suffered a compression fracture of his spine, a concussion, and bruising to his shoulder, chest, and ribs as a result of the accident. (*Id.* ¶¶ 52–53.) Bryan S. alleges that, due to, Trooper Jackson's physical assault and directive to meet him outside the hospital, Bryan S.'s injuries were exacerbated. (*Id.* ¶ 54.)

Bryan S. was subsequently criminally prosecuted following his arrest by Trooper Jackson despite the false allegations. (*Id.* ¶¶ 55, 61.) During the pendency of the criminal charges, Trooper Jackson claimed to have lost the dash cam evidence containing footage of the scene of the accident and encounter between him and Bryan S. (*Id.* ¶ 68.) The dash cam video footage was later found, which purported captured the encounter with Trooper Jackson but was edited to eliminate the trooper's use of force upon Bryan S. (*Id.* ¶ 47.) Trooper Jackson also erased the name of the off-duty New York City Police Detective from the official police reports, although the information was later obtained. (*Id.*) All criminal charges against Bryan S. were subsequently dismissed. (*Id.* ¶ 66.)

## LEGAL STANDARD

### I.   Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (citing Fed. R. Civ. P. 12(b)(1)). "Once challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction." *Augienello v. F.D.I.C.*, 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004) (Sweet, J.) (internal citations omitted). "On a motion to dismiss for lack of subject matter jurisdiction, the court may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings" such as affidavits or other evidence. *Id.* at 588 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). "[C]ourts must accept as true all material factual allegations in the complaint" and "refrain from drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Fox v. Commonw. Worldwide Chauffeured Transp. of NY, LLC*, No. 08–CV–1686, 2009 WL 1813230, at *1 (E.D.N.Y. June 25, 2009) (Garaufis, J.) (internal quotation marks and citations omitted).

## II.   Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents

attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

### III.    42 U.S.C. § 1983

Under 42 U.S.C. § 1983 ("Section 1983"), "[e]very person who, under color of any statute . . . of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### IV.    42 U.S.C. § 1985(3)

42 U.S.C. § Section 1985(3) ("Section 1985(3)") prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. Section 1985(3). To adequately plead a claim under Section 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d

Cir. 1993); *see Thomas*, F.3d at 146. A Section 1985(3) claim also requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

## DISCUSSION

Plaintiff asserts claims under federal law pursuant to Section 1983 against Trooper Jackson for: (1) violation of his rights under the First and Fourteenth Amendment to freely associate with others; (2) violation of his Fourth Amendment right to be free from excessive force; (3) false arrest and imprisonment; and (4) malicious prosecution.  (*See* Compl. at 13–17.) Plaintiff also asserts federal claims—premised on Trooper Jackson's alleged violations of his constitutional rights—against the remaining Defendants for: (1) conspiracy under Section 1983; (2) conspiracy under Section 1985(3)[2]; and (3) supervisory liability and failure to intercede under Section 1983. (*See id.* at 13–18.) Further, Plaintiff asserts state common law claims against all Defendants for (1) gross negligence, negligence, and negligent infliction of emotional distress; (2) assault and battery; (3) false arrest; (4) *prima facie* tort; and (5) libel and slander. (*See id.* at 18–22.)

Defendants seek to dismiss all of Plaintiff's claims, arguing that: (1) Trooper Jackson did not use excessive force against nor falsely arrest Plaintiff; (2) the individual actions of Captain Artuz and Lieutenant Harvey do not amount to any constitutional violation; (3) Plaintiff's federal claims fail as a matter of law on several grounds; (4) Defendants are entitled to qualified immunity; (5) Plaintiff's state law claims fail as a matter of law on several grounds; and (5) Trooper Jackson, Captain Artuz, and Lieutenant Harvey are immune from state tort claims because they are being

---

[2] None of the allegations in Plaintiff's complaint seem to invoke § 1985(1) and 2 because these subsections relate to conspiracies to prevent officers from performing their duties and to obstruct judicial proceedings by intimidating a party, witness, or juror.

sued for actions that are discretionary in nature. (*See* Mot. at 18–19.) The Court analyzes Defendants' argument in that order.

## I. Plaintiff's excessive force claim against Trooper Jackson succeeds because he sufficiently alleges that the force used was objectively unreasonable, but it fails against Jane Doe 1 due to lack of her personal involvement

Plaintiff advances a claim for excessive force based on Trooper Jackson's use of force against Plaintiff at the accident scene.

The parties' main dispute involves only the first element of a Section 1983 claim: whether there was a deprivation of a constitutional right. Here, Plaintiff's claim implicates Bryan S.'s Fourth Amendment right to be free from excessive force. Plaintiff avers that Trooper Jackson violated this right by "shaking [him], slapping him in the face multiple times, and striking him" immediately after Bryan S. had a seizure that resulted in a car accident. (Am. Compl. ¶¶ 10, 18.) Taking Plaintiff's allegations in the Am. Compl. as true, Plaintiff has plead sufficient facts to support a plausible claim for excessive force against Trooper Jackson because Trooper Jackson's actions were not objectively reasonable.

As a preliminary matter, the Court notes that the relevant allegations here suggest that Trooper Jackson suspected that Bryan S. was driving under the influence, and that he sought to seize him until he could confirm his suspicions. *See, e.g.*, Am. Compl. ¶¶ 20, 26 (alleging that Trooper Jackson asked Bryan S. whether he took any medications and also: "What the fuck are you on?"); *id.* ¶ 26 (alleging that Trooper Jackson told Bryan S. that he would take him to jail and not the hospital until he submitted to blood tests). Therefore, based on these allegations, Trooper Jackson's use of force during the course of this encounter must be analyzed under the Fourth Amendment's "reasonableness standard." *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

The Fourth Amendment's reasonableness standard requires "balancing . . . 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Dancy v. McGinley*, 843 F.3d 93, 116 (2d. Cir. 2016) (quoting *Graham*, 490 U.S. at 395–96). A police officer's use of force is excessive "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham* 490 U.S. at 397).

Factors relevant to this inquiry include:

> "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001)).

"[I]t is . . . well established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional rights." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 797 (S.D.N.Y. 2021) (quoting *Mesa v. City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (cleaned up)). However, "[i]t is the force used, not the injuries caused, which must be determined to be *de minimis* as a matter of law." *Jackson v. Mastrangelo*, 405 F. Supp. 3d 488, 492 (W.D.N.Y. 2019) (quoting *Campbell v. City of New York*, No. 06-CV-5743, 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010)).

As alleged, Trooper Jackson's use of force was neither *de minimis* nor reasonable. Trooper Jackson violently shook Bryan S., slapped him multiple times, and struck him about the head and body. *See Campbell v. City of New York*, No. 06 CV 5743 (HB), 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010) ("The alleged force used on Campbell when he was being interrogated

11

at the police station, slapping and cigarette burns, in particular cannot conceivably be deemed a *de minimis* use of force if it in fact occurred."). Plaintiff was also awake and able to communicate at all relevant times, precluding the possibility raised in this Court's prior opinion that Trooper Jackson ostensibly used such force to assess Bryan S.'s sobriety or consciousness.

Moreover, Defendant's use of force cannot be deemed reasonable due to the stark disparity between the threat posed by Plaintiff and the level of force employed by Trooper Jackson. Bryan S. was restrained in his car, pleading for help, and in "significant pain and in need of medical attention" during Defendant's use of force against him. *See Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 391 (S.D.N.Y. 2009) ("[W]e do not believe that any particular quantum of physical injury is required in such circumstances, since the evidence demonstrates that no use of force was justified. That is the scenario here, which involved an interrogation of an unresisting previously-arrested individual.") Accordingly, Trooper Jackson's multiple strikes in response were disproportional. *See, e.g.*, *Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018) (finding that protest attendees sufficiently alleged that officers' use of a long-range acoustic device to disperse non-violent attendees was excessive given the limited security risk they posed).

Plaintiff further alleges that his injuries ("compression fracture of [the] spine, concussion and bruising to [the] shoulder, chest and ribs") were "exacerbated" by Trooper Jackson's aforementioned actions. (Am. Compl. ¶¶ 53–54.) The term "exacerbated" in Plaintiff's Am. Compl. is somewhat vague. However, within the Second Circuit this language has withstood a higher summary judgment standard, and thus the Court finds it sufficient to state a plausible claim herein. *See In re Dayton*, 786 F. Supp. 2d 809 (S.D.N.Y. 2011) (finding that alleged inconsistencies in the record did not warrant dismissal on a motion for summary judgment where the plaintiff consistently alleged officers exacerbated his previous injuries). Lastly, Trooper Jackson's striking

Plaintiff "in an effort to 'get even' with him" suggests Trooper Jackson failed to make a good-faith effort to restore discipline. (Am. Compl. ¶ 22.)  *See, e.g.*, *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501 (S.D.N.Y. 2008) (finding that striking a prisoner in the face several times while he was standing naked in stairwell surrounded by several corrections officers was not within with corrections officer's asserted good-faith effort to maintain order).

Conversely, Plaintiff fails to allege how Jane Doe 1, who was allegedly present at the scene with Trooper Jackson, was personally involved in the violation of Bryan S.'s right to be free of excessive force. *See Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ("A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so.") (citing *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

 Plaintiff merely offers the conclusory allegation that Jane Doe 1 was "fully aware of the wrongful actions of Defendant Jackson, participated and otherwise assisted Defendant Jackson in committing those actions, and failed to intercede to stop Defendant Jackson." (Am. Compl. ¶ 59.) This lone vague conclusory assertion is insufficient to support the finding that Jane Doe 1 observed the alleged misconduct, was personally involved in the use of excessive force, or that she had a "reasonable opportunity" to intervene. Accordingly, Plaintiff has not provided sufficient facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's excessive force claim is denied with respect to Trooper Jackson, but it is granted without prejudice with respect to Jane Doe 1.

## II. Plaintiff succeeds in alleging a claim for false arrest and false imprisonment because his apprehension was allegedly based upon a fabricated statement

In his Am. Compl., Plaintiff alleges that, while hospitalized, Trooper Jackson arrested him on the basis of a confession (i.e., divulging the use of marijuana and prescribed oxycodone) that he never made. (Am. Compl. ¶¶ 38–39.) In moving to dismiss, Defendants contend that probable cause existed to arrest Plaintiff. (Def. Mem., at 9.) As it is ultimately not evident that probable cause existed from the face of the Amended Complaint, the Court disagrees.

"A Section 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." *Nelson v. City of New York*, No. 18 Civ. 4636 (PAE), 2019 WL 3779420, at *5 (S.D.N.Y. Aug. 9, 2019) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), *cert. denied*, 528 U.S. 946 (1999)). Under New York law, a plaintiff alleging false arrest must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)) (internal quotations omitted).

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Weyant*, 101 F.3d at 852. "An officer has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Humbach v. Canon*, No. 13-CV-2512 (NSR), 2014 WL 6057703, at *7 (S.D.N.Y. Nov. 12, 2014) (quoting *Jaegly v. Couch*, 439

14

F.3d 149, 152 (2d Cir. 2006)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Nelson*, 2019 WL 3779420 at *6 (quoting *Weyant*, 101 F.3d at 852). To warrant dismissal on a motion to dismiss, "[the] plaintiff's version of events [must] establish[ ] probable cause to arrest." *See Jones v. Maples/Trump*, No. 98 CIV. 7132(SHS), 2002 WL 287752, at *6 (S.D.N.Y. Feb. 26, 2002); *see also Cabble v. City of New York*, No. 04 CV 9413(LTS), 2009 WL 890098, at *5 (S.D.N.Y. Mar. 30, 2009) (explaining that "courts have held that a Section 1983 claim may still be dismissed if the plaintiff's own version of events in the Complaint establishes a probable cause basis to arrest").

Here, Plaintiff has plainly satisfied the first three elements of his false arrest claim. He was arrested, which was Trooper Jackson's intent, and Plaintiff did not consent to the arrest. (Am. Compl. ¶¶ 38–41.) The parties thus dispute whether Trooper Jackson had probable cause for the arrest. For their part, Defendants continually cite to the Am. Compl. for the proposition that probable cause existed for an arrest. (Def. Mem., at 9–10.) Defendants point out that Trooper Jackson investigated the cause of the accident by asking Bryan S. if he was "on anything," (Am. Compl. ¶ 20) and was told by Plaintiff's wife that she had given her husband his required medications on the day of the accident. (Am. Compl. ¶ 33.) This would suggest, according to the Defendants, that Trooper Jackson had probable cause.

Yet, Plaintiff's Am. Compl. critically states that "*the basis* for Plaintiff Bryan Swanhart's arrest" was predicated on Trooper Jackson's claim that Bryan S., while still undergoing medical care at Danbury Hospital, confessed to smoking marijuana at approximately 9:30 a.m. and consuming prescribed oxycodone at around 11:00 a.m. (emphasis added) (Am. Compl. ¶ 38.) In the Am. Compl., Plaintiff affirmatively maintains that he did not make any such statements (Am.

Compl. ¶ 39), and at no time prior to his arrest did Trooper Jackson administer any tests to suggest Bryan S. was under the influence. (Am. Compl. ¶ 39.) Thus, Plaintiff's false arrest claim survives the present motion to dismiss, as Plaintiff plausibly disputes whether Trooper Jackson had probable cause to arrest him by alleging that Trooper Jackson established probable cause through false representations. *See Dotson v. Farrugia*, No. 11 Civ. 1126 (PAE), 2012 WL 996997, at *4 (S.D.N.Y. Mar. 26, 2012) (denying motion to dismiss where the complaint's allegations, taken as true, "plausibly challenge[d] the State Defendants' probable cause to arrest").

The Court therefore denies Defendants' motion to dismiss Plaintiff's false arrest claim against Trooper Jackson.

### III. Plaintiff fails to allege personal involvement of Captain Artuz, Lieutenant Harvey, and John Does 2-5

Next, the Court agrees with Defendants that Plaintiff's claims against Captain Artuz, Lieutenant Harvey, and John Does 2-5 are insufficiently pled for failure to allege their personal involvement in his excessive force, false arrest, malicious prosecution, and violation of familial association claims. (Def. Mem., at 4.) Plaintiff also fails to allege personal involvement of John Does 2-5 with respect to his Supervisory Liability claim.

"A defendant in a Section 1983 action may not be held responsible unless he was personally involved in the alleged constitutional violations." *Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000). "The Second Circuit has held that 'personal involvement' for these purposes means 'direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.'" *Id.* (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996)).

Here, the majority of Plaintiff's allegations underlying each of his federal causes of action hastily attribute the purported violations of Plaintiff's rights to all "Defendants" despite Plaintiff's

initial factual allegations averring only the personal involvement of Trooper Jackson, and at best, also that of Jane Doe 1—who was allegedly present during the incidents with Plaintiff. (*Compare* Am. Compl. ¶ 18 ("Trooper Kyle Jackson . . . [used] excessive force . . . by violently shaking [Bryan S.], slapping him in the face . . . and striking him . . . .") *and id.* ¶ 29 ("Trooper Kyle Jackson . . . threw . . . [Bartholomew], who is African-American, out from [Bryan S.'s] hospital room, denying them access to each other and threatened her with arrest if she failed to comply with his order as a result of her race.") *with id.* ¶ 67 ("The conduct of *the Defendants* toward Plaintiff [Bryan S.] constituted assault and battery upon the person of the Plaintiff by Defendants." (emphasis added)) *and id.* ¶ 78 ("By their conduct and under color of law, federal and state, *Defendants* deprived Plaintiff of his First and Fourteenth Amendment rights to freely associate with others." (emphasis added)).

The Court agrees with Defendants that the allegations implicating Captain Artuz and Lieutenant Harvey—that they simply received false information about the Plaintiff, their supervisee, which in turn led him to suffer repercussions from his employer—do not amount to a violation of Plaintiff's constitutional rights. *See, e.g.*, *Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996) ("[A] defendant in a Section 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."). Further, Plaintiff does not allege that either of these Defendants participated in his subsequent arrest and prosecution, nor his temporary separation from his wife.

Plaintiff's federal claims against John Does 2-5 similarly fail because Plaintiff alleges only that Trooper Jackson's actions "were supervised by his supervisors presently identified as John Does herein" and that they "knew or should have known that the allegations" leading to Bryan S.'s arrest were false and not based on probable cause. (Am. Compl. ¶¶ 60, 69); *see also Gray-Davis*

*v. New York*, No. 5:14-CV-1490 GTS/TWD, 2015 WL 2120518, at *8 (N.D.N.Y. May 5, 2015) (dismissing supervisory liability claim against a John Doe defendant because the plaintiff failed to sufficiently allege personal involvement).

Accordingly, the Court dismisses all of Plaintiff's federal claims against Captain Artuz, Lieutenant Harvey, and John Does 2-5 without prejudice.

### IV. Plaintiff's conspiracy claims fail because Defendants are legally incapable of conspiring together under the intracorporate conspiracy doctrine and Plaintiff fails to allege that an agreement was made

The Court concurs with Defendants that Plaintiff's conspiracy claims under Sections 1983 and 1985(3) fail because they are barred by the intracorporate conspiracy doctrine. Specifically, Plaintiff: (1) has not asserted sufficient facts to support the finding of an exception to this doctrine; and (2) fails to allege that Defendants entered into an agreement to cause him harm. (Def. Mem., at 6.)

"Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together." *Little v. City of New York*, 487 F. Supp. 2d 426, 442–43 (S.D.N.Y. 2007) (quoting *Salgado v. City of New York*, No. 00 Civ. 3667(RWS), 2001 WL 290051, at *8–9 (S.D.N.Y. March 26, 2001) (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978); *Girard v. 94th St. and Fifth Ave. Corp.*, 530 F.2d 66, 71–72 (2d Cir. 1976))). An exception to this doctrine exists where the individuals are "motivated by an independent personal stake in achieving the corporation's objective." *Id.* (quoting *Salgado*, 2001 WL 290051, at *8.)

Plaintiff argues that this exception applies. Plaintiff bases this argument on the fact that Trooper Jackson, Lieutenant Harvey, and Captain Artuz all had prior employment with DOCCS. (Response in Opp., at 7.) Plaintiff subsequently states therein that Harvey and Artuz took negative

actions "as a result" of Trooper Jackson's vow to "get even." *Id*. But no such causal connection is made within Plaintiff's Am. Compl., and parties "cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005). Furthermore, the Court notes that Trooper Jackson's alleged personal desire for retaliation against Bryan S., without evidence of or the existence of an agreement with others to act upon this desire, is insufficient to qualify as an exception to the intracorporate conspiracy doctrine. *See, e.g.*, *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 389 (S.D.N.Y. 2013) ("Reprehensible as it is, a single use of a racial epithet by a single officer does not, as noted above, plausibly indicate that the eight individual [d]efendant officers (or even a subset of them) entered into any sort of agreement to deprive [the plaintiff] of constitutionally protected rights [under section 1983].").

Plaintiff also advances other allegations regarding the inapplicability of the intracorporate conspiracy doctrine based on the employment status of Captain Harvey and Lieutenant Artuz with DOCCS, and Trooper Jackson and John Does 1-5 by NYSP. (Response in Opp., at 6.) However, even then, Plaintiff fails to allege that Defendants entered into an agreement. Plaintiff formulaically alleges that the individual Defendants conspired with each other to violate his rights under both Sections 1983 and 1985(3), (*see* Am. Compl. ¶¶ 79–82, 104–106.) Such conclusory statements fail to sufficiently allege the requisite elements for either claim. *See Banks v. City of White Plains Police*, No. 14 CV 670 (VB), 2014 WL 6642360, at *3 (S.D.N.Y. Oct. 17, 2014) ("[T]he pleadings must present facts tending to show agreement and concerted action" and thus conclusory allegations are inadequate.)

Moreover, to state a claim for conspiracy under Section 1985(3), "the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Mian*, 7 F.3d at 1088. Although Plaintiff alleges that Trooper

Jackson threw Plaintiff's wife out his hospital room "as a result of her race" (Am. Compl. ¶ 123), Plaintiff fails to assert a "factual basis supporting . . . that defendants entered into an agreement, express or tacit, to achieve the unlawful end" of this discriminatory treatment. *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003). And, as the Court concludes that Plaintiff's Section 1985(3) claims fail, their claims under § 1986 must also fail because "a § 1986 claim must be predicated upon a valid § 1985 claim." *Mian*, 7 F.3d at 1088.

Accordingly, the Court dismisses Plaintiff's conspiracy claims against Trooper Jackson, Captain Artuz, Lieutenant Harvey, and John Does 1-5 without prejudice.

**V.   Plaintiff's remaining federal claims against Trooper Jackson and Jane Doe 1 fail**

The only federal claims remaining are Plaintiff's claims against Trooper Jackson and Jane Doe 1, including: (1) for Bryan S.'s malicious prosecution; and (2) for violation of Plaintiff's rights to familial association under the First and Fourteenth Amendment. The Court addresses these claims in that order.

*A.   Plaintiff fails to allege a claim for malicious prosecution*

The elements of a malicious prosecution claim under Section 1983 are: (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; (4) the prosecution terminated in the plaintiff's favor; and (5) there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights. *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Singer,* 63 F.3d at 116–17 (relying in part on common law and New York State malicious prosecution law in analyzing a Section 1983 malicious prosecution claim and observing that "[t]he 'appropriate starting point' of the inquiry is the common law of torts" (quoting *Carey v. Piphus,* 435 U.S. 247, 258 (1978))).

As discussed above, Plaintiff's Am. Compl. plausibly disputes whether Trooper Jackson had probable cause to arrest him by alleging instances of false representations. Regardless of whether the element of probable cause is met, however, Plaintiff alleges no facts indicating that either Trooper Jackson or Jane Doe 1 played an active role in his subsequent prosecution. Although police officers do not generally "commence or continue" criminal proceedings against Defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to "play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v. City of New York,* 612 F.3d 149, 163 (2d Cir. 2010) (quoting *Rohman,* 215 F.3d at 217). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (citing *Manganiello,* 612 F.3d at 163). However, Plaintiff alleges no such actions on the part of Trooper Jackson or Jane Doe 1. Lastly, the Am. Compl. fails to assert facts to support a finding of a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights

Accordingly, the Court dismisses Plaintiff's malicious prosecution claim under Section 1983 against Trooper Jackson and Jane Doe 1 without prejudice.

B. *Plaintiff's claims for the violation of familial association rights under the First and Fourth Amendments fail*

Plaintiff next claims that Trooper Jackson interfered with his familial association when he was hospitalized because Trooper Jackson refused to allow Bartholomew and Joyce S. contact with him during Trooper Jackson's questioning of him. (Am. Compl. ¶¶ 28–29.) Defendants, however, argue that this claim is meritless because the alleged interference with Plaintiff's familial association was not "shocking, arbitrary, and egregious." (Def. Mem., at 13–14.) The Court agrees with Defendants, and it thereby dismisses Plaintiff's familial association claims without prejudice.

The Second Circuit has held that relatives maintain, "in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state." *Anthony v. City of New York*, 339 F.3d 129, 142–43 (2d Cir. 2003). To prevail on a claim for violation of familial association rights, a plaintiff "must demonstrate that [the alleged offending act] was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* at 143 (internal citation and quotations omitted) (holding that a woman's temporary separation from her sister due to involuntary confinement at hospital did not violate her sister's substantive due process right to familial association).

To rise to a "conscience-shocking level," the misconduct alleged in a substantive due process claim must be either conduct intended to injure in some way that is unjustified by any governmental interest or is inflicted with deliberate indifference in a manner that was shocking under the circumstances. *Miner v. New York State Dep't of Health*, No. 02 Civ. 3180, 2004 WL 1152491, at *5 (S.D.N.Y. May 24, 2004) (finding the lack of deliberate indifference fatal to the violation of a familial association rights claim of an inmate whose wife filed for divorce after receiving an inaccurate letter notifying her that her husband was HIV positive).

Here, Plaintiff fails to sufficiently allege that Trooper Jackson's interference with Bryan S.'s familial association was "conscience-shocking." Plaintiff alleges that Trooper Jackson threw Bryan S.'s wife, who is African-American, from Bryan S.'s hospital room, and "threatened her with arrest if she failed to comply with his order *as a result of her race*." (emphasis added) (Am. Compl. ¶ 28.) Although Trooper Jackson's alleged motivations are reprehensible, his actions fail to meet the high-bar for "shocking" misconduct within the contours of Second Circuit jurisprudence. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("[O]nly the most

egregious official conduct can be said to be 'arbitrary in the constitutional sense'" and therefore unconstitutional); *Herman v. The City of New York*, 15-CV-3059 (PKC) (SJB) (E.D.N.Y. Mar. 28, 2022) (holding that court orders limiting a plaintiff's visitation with his children did not infringe upon his constitutional right to familial association). Indeed, as Plaintiff does not allege that Trooper Jackson made statements regarding Bartholomew's race or give any indication that Trooper Jackson removed her from the room on account of her race other than a single conclusory allegation, Plaintiff's claim is spare. Accordingly, the Court dismisses Plaintiff's claims against Trooper Jackson for interference with their familial association without prejudice. The Court also dismisses these same claims against Jane Doe 1, who Plaintiff once again fails to allege was personally involved in the circumstances underlying Plaintiff's claims.

### VI. The Court does not need to address Defendants' assertions of qualified immunity except with respect to Plaintiff's excessive force and false arrest claims because Plaintiff has sufficiently pled the pair and Defendants accordingly forfeit their requisite immunity

The Court only needs to address Defendants' argument that they are entitled to qualified immunity as to Plaintiff's excessive force and false arrest claims because, as noted above, Plaintiff's other claims against Defendants fail.

It is well established that qualified immunity may operate as a defense to false arrest and excessive force claims. See *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003); *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. alKidd*, 131 S.Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing

his conduct." *Harlow*, 457 U.S. at 818-19. It is within the Court's discretion to determine the order in which the two prongs are analyzed. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Having already found that Plaintiff sufficiently alleges claims of excessive force and false arrest, the Court turns to the second prong of the test. There is no question that the rights at issue in this case—to be free from false arrest and excessive force—were clearly established at the time of the incident. *See Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995) (collecting cases regarding false arrest and excessive force).

Thus, because Plaintiff sufficiently alleges claims of false arrest and excessive force, and because the law is clearly established with regards to each of those rights, Defendants' request for qualified immunity is denied with respect to both claims.

## VII. Plaintiff's state claims fail as a matter of law

First, the parties agree that the applicable statute of limitations for Plaintiff's intentional state tort claims, inclusive of the defamation claims, is one year. Significantly, Plaintiff concedes that his claims for intentional infliction of emotional distress, assault, battery, and false arrest are time barred. Thus, said claims are dismissed with prejudice. (*See* Resp. in Opp., at 13.).

Defendants also seek dismissal of Plaintiff's defamation claims as untimely. Plaintiff contends his defamation claim, pled as both libel and slander, should not be dismissed as untimely because he is unsure of the date of publication of the defamatory material.[3] (*Id.*)  In the operative complaint, Plaintiff alleges that the defendants, individually and/or collectively, have defamed Plaintiff by libel per se and/or slander per se, libel and/or slander, based upon the false arrest of Plaintiff and release of false information concerning said arrest to Plaintiff's employer, the sum

---

[3] The Court notes that the operative complaint is inartfully drafted and as a result the Court is unable to determine whether Plaintiff's claims are time barred.

and substance of which defamatory statements was that the Plaintiff was under the influence of drugs and/or alcohol while driving. (Am. Compl. ¶ 129.)

To properly state a claim for defamation under New York law, a plaintiff must allege: (1) a defamatory factual statement concerning the plaintiff; (2) publication of the defamatory statement to a third party; (3) the applicable level of fault on the part of the speaker or publisher; (4) the falsity of the defamatory statement; and (5) special damages or per se actionability. *Tannerite Sports LLC v. NBC Universal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017*) citing Palin v. New York Times*, 940 F.3d 804, 809 (2d Cir. 2019). In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally. *See* NY CPLR § 3016(a). When pleading a slander claim, a plaintiff is required to allege the date, place and content of each slanderous oral communication. *Id*.; *See also Williams v. Varig Brazilian Airlines*, 169 A.D.2d 434, 437, 564 N.Y.S.2d 328, 330 (1991). Similarly, Federal Rules of Civil Procedure § 8 "requires that each pleading be specific enough to afford a defendant sufficient notice of the communications complained of to enable him to defend himself." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) quoting *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06 Civ. 1260, 2009 WL 4547792, at *8–9 (E.D.N.Y. Dec. 1, 2009) (citations omitted); *see also Thai v. Cayre Group, Ltd*., 726 F.Supp.2d 323, 329 (S.D.N.Y.2010) ("A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." (*quoting Gargiulo v. Forster & Garbus Esqs*, 651 F.Supp.2d 188, at 192 (S.D.N.Y. 2009) (quotation marks omitted))).

Plaintiff's allegations fail to indicate which defendant made the statement, to whom the communication was made, the manner of the communication, and the approximate date of the

communication. Such deficiencies fall short of the requisite pleading requirements. Accordingly, Plaintiff's defamation claims are dismissed without prejudice.

Lastly, as Plaintiff's claims are premised on Defendants' alleged intentional acts, Plaintiff's negligence claims are not cognizable. *See Bah v. City of New York*, No. 13 Civ. 6690 (PKC), 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014) (citing *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993) ("Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence."). Further, "[w]here a plaintiff seeks damages that arise from her arrest and detention, she may not recover under general negligence principles*." Hollins v. City of New York*, No. 10 Civ. 1650, 2014 WL 836950, at *11 (S.D.N.Y. March 3, 2014) (citing *Ferguson v. Dollar Rent A Car, Inc.*, 959 N.Y.S.2d 55, 56 (1st Dep't 2013)). Plaintiff's state law negligence claims are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is DENIED in part and GRANTED in part. (ECF No. 46.) The motion is DENIED as to Plaintiff's federal claims for excessive force and false arrest against Trooper Jackson. Plaintiff's remaining federal claims are deemed dismissed without prejudice. Plaintiff's state law claims for intentional infliction of emotional distress, assault, battery, false arrest, and negligence are dismissed with prejudice. Plaintiff's state law claims for defamation are dismissed without prejudice.

Plaintiff is granted leave to file a Second Amended Complaint inclusive of all claims that were dismissed without prejudice on or before August 10, 2023. If Plaintiffs fail to timely file a Second Amended Complaint, absent good cause, all claims dismissed without prejudice will be deemed dismissed with prejudice. Defendants shall have until September 9, 2023, to answer or to

seek leave of Court to move for the appropriate relief. The Clerk of Court is respectfully directed

to terminate the motion at ECF No. 46.

Dated: July 13, 2023                                   So Ordered,
      White Plains, NY

                                                               _____
                                                                Hon. Nelson S. Roman
                                                                U.S. District Court, SDNY