USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRYAN SWANHART,

                Plaintiff,

-against-

TROOPER KYLE JACKSON, SHIELD # 2795,

                Defendant.

7:20 CV 6819 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge:

On September 1, 2017, at approximately 1:20 p.m., Plaintiff Bryan Swanhart ("Plaintiff") was involved in two motor vehicle accidents, approximately 2 miles apart, in the town of Southeast, New York. (Def. 56.1 ¶ 1, ECF No. 102.) Defendant Trooper Kyle Jackson ("Defendant") disputes Plaintiff's claim that he suffered a seizure at the time of the accidents that caused him to lose control of his vehicle. (Pl. 56.1 ¶ 2 (ECF No. 97); Def. 56.1 Opp. ¶ 2 (ECF No. 102).) Plaintiff disputes Defendant's claim that he admitted to medical personnel at the scene that he had smoked marijuana earlier in the day, which partly served as Defendant's alleged basis for arresting Plaintiff for driving while impaired. (Def. 56.1 ¶¶ 14–16, 26; Pl. 56.1 Opp. ¶¶ 14–16, 26 (ECF No. 105).) After prosecutors dropped the charges, Plaintiff brought claims against Defendant (and several other parties that have since been terminated from the action) for false arrest, excessive force, malicious prosecution, unlawful search of Plaintiff's vehicle, and unlawful seizure of Plaintiff's blood. Plaintiff and Defendant each moved for summary judgment. (ECF Nos. 93,

1

98.) For the reasons that follow, Plaintiff's motion is DENIED and Defendant's motion is GRANTED IN PART.[1]

## FACTUAL BACKGROUND[2]

On September 1, 2017, at approximately 1:20 p.m., Plaintiff Bryan Swanhart ("Plaintiff") was involved in two motor vehicle accidents, minutes apart, in Southeast, New York. (Pl. 56.1 ¶ 1.) Defendant responded to both accidents. *Id.* ¶ 3. At the second accident scene, Defendant encountered off-duty New York City Police Detective Pascale, who believed that Plaintiff "appeared to be having a seizure" when he saw him. (Def. 56.1, Ex. E, Ex. F (p. 16–17).) Detective Pascale informed this to Trooper Gallipani, another trooper on the scene. (Def. 56.1 ¶ 4.) The Parties dispute whether Detective Gallipani ever spoke directly with Defendant at the scene. (Def. 56.1 ¶ 4; Pl. 56.1 Opp. ¶ 4.) During his deposition, Detective Pascale did not identify Defendant as the trooper he spoke with at the accident scene. (Def. 56.1 ¶ 4.) Another witness at the scene, Terrence Brennan, provided a statement to Trooper Gallipani indicating that he observed what appeared to be vomit on Plaintiff. (Def 56.1 ¶ 6.)

---

[1] Plaintiff moved for summary judgment on his claims of false arrest, use of excessive force, malicious prosecution, unlawful search of his vehicle, and unlawful seizure of his blood. *See generally* Pl. Mem. of L., ECF No. 94. Per the Court's Order on September 29, 2023, all of Plaintiff's claims, except for his false arrest and excessive force claims against Defendant, were dismissed. (ECF No. 56.) Accordingly, Plaintiff's motion for summary judgment as to his claims for malicious prosecution, unlawful search of his vehicle, and unlawful seizure of his blood claims are moot and these claims are not addressed in this Opinion. Relatedly, the Court does not address disputed or undisputed facts that are relevant only to the dismissed claims and immaterial to the false arrest and excessive force claims addressed here.

[2] Because the Parties have cross-moved for summary judgment, there are four factual statements before the Court: Plaintiff's 56.1 Statement in Support of Summary Judgment ("Pl. 56.1", ECF No. 97); Defendant's Opposition to Plaintiff's 56.1 Statement in Support of Summary Judgment ("Def. 56.1 Opp.", ECF No. 102); Defendant's 56.1 Statement in Support of Summary Judgment ("Def. 56.1", ECF No. 102); and Plaintiff's Opposition to Defendant's 56.1 Statement in Support of Summary Judgment ("Pl. 56.1 Opp.", ECF No. 105). Defendant's 56.1 Statement and Opposition were filed as a single document at ECF No. 102. Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a Party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents.

According to Defendant, while receiving medical treatment at the scene of the second accident, Plaintiff told the EMT paramedic who treated him that day, Jessica Pettit (formerly Jessica Schwarz), that he had smoked marijuana earlier in the day, and Defendant overheard the statement. (Def. 56.1 ¶ 14; Pl. 56.1 Opp. ¶14.) In her Affirmation, Ms. Pettit stated that, while recording information provided by Plaintiff, a male trooper was present and within earshot, and that Plaintiff reported having had a seizure, smoking marijuana earlier in the day, and taking his prescribed medication for chronic pain. (Def. 56.1, Ex. K.) Ms. Pettit's Patient Care Report, dated September 1, 2017, also indicates that Plaintiff had stated that "he smoked marijuana earlier in the day" and taken "his prescribed pain medication for chronic pain." (Def. 56.1, Ex. J.) Plaintiff denies ever making these statements to Ms. Pettit. (Pl. 56.1 Opp. ¶¶ 14–16.) According to Plaintiff, Plaintiff informed Defendant at the scene of the accident that he was in significant pain and needed medical treatment, but instead of addressing Plaintiff's medical needs, Defendant violently shook Plaintiff, slapped him in the face multiple times, struck him about the head and body, and yelled profanities at Plaintiff. (Pl. 56.1 ¶¶ 9–11; Def. 56.1 Opp. ¶ 9–11.) Defendant denies ever yelling at, shaking, slapping, or striking Plaintiff. (Def. 56.1 Opp. ¶¶ 10–11.)

Prior to the accident, Plaintiff stopped at a gas station to purchase fuel and spoke with the gas station operator, Barbara Evans, who had become familiar with Plaintiff through his regular stops at the station over a period of at least ten years. (Def. 56.1 ¶ 7, Ex. I, p. 18.) Ms. Evans had no personal knowledge as to whether Plaintiff had a seizure after she interacted with him and before he was involved in the two accidents, but their interaction that day "was no different than any other day" and Plaintiff "did not seem impaired in any way." (Def. 56.1 ¶ 8, Ex. H.)

At the time of the accident, Plaintiff had been continuously employed by the New York State Department of Corrections and Community Supervision ("DOCCS") since 1997;

specifically, at the time, he was posted at Downstate Correctional Facility. (Def. 56.1 ¶¶ 20, 22.) Defendant had also been employed by DOCCS prior to becoming a state trooper, specifically at Sing Sing Correctional Facility from 2008 to 2016. (*Id.* ¶ 19.) Despite the overlap in the DOCCS system, Defendant and Plaintiff never worked together at any DOCCS facility. (*Id.* ¶ 21.) Plaintiff claims that, several years prior to the accident, at an after-work party at Sing Sing Correctional Facility, "Defendant had an issue with him because he worked at Downstate Correctional Facility" and threatened to "get even" with Plaintiff. (*Id.* ¶ 22.) According to Plaintiff, Defendant's animus towards him motivated Defendant to arrest him falsely and use excessive force. (Pl. 56.1 ¶ 22; Def. 56.1 Opp. ¶ 22.) Defendant denies ever meeting Plaintiff while employed by DOCCS, ever having an encounter with Plaintiff at any party, or having any animus towards Plaintiff. (Def. 56.1 Opp. ¶¶ 22.)

After the accident, Plaintiff was transported to Danbury Hospital in Connecticut. (Def. 56.1 ¶ 18.) Defendant claims that while at Danbury Hospital, Plaintiff "confessed" to have "used prescribed medication 'oxycodone' around 11:00 a.m. and smoked marijuana around 9:30 a.m." (Def. 56.1 ¶ 26, Ex. C, p. 49–50; Pl. 56.1 Opp. ¶ 26.) Plaintiff denies having told anyone that he smoked marijuana and contends that Defendant questioned Plaintiff at Danbury Hospital without lawful authority to do so as Defendant is a New York State Trooper and the hospital is in Connecticut. (Pl. 56.1 Opp. ¶ 26.) At the hospital, Plaintiff's blood was drawn and the blood test results were positive for Delta-9-tetrahydrocannabinol. (Def. 56.1, Ex. M.) Plaintiff claims that he did not consent to having his blood drawn, that there was no chain of evidence regarding the blood drawn, and that, per documentary evidence provided by Plaintiff's medical provider, "Plaintiff's use of prescribed medication known as Dexilant can result in a false positive as part of a drug screen." (Pl. 56.1 Opp. ¶ 27.)

4

Defendant arrested Plaintiff with violations of New York State Vehicle and Traffic Law sections 1192(04), 1129(0A), and 0600(01A). (Def. 56.1 ¶ 34.) Defendant's alleged basis for arresting Plaintiff were Plaintiff's alleged statements to the EMT paramedic at the scene and to physicians at Danbury Hospital. (Def. 56.1 Opp. ¶ 90.) On February 16, 2018, all criminal charges against Plaintiff were ultimately dismissed and sealed, resulting in a termination in Plaintiff's favor without any finding of guilt of any offense. (Pl. 56.1 ¶ 56.)

On September 13, 2017, Plaintiff checked himself in to a substance abuse treatment facility in Florida. (Def. 56.1 ¶ 40.) According to facility records, Plaintiff indicated to facility personnel that he had suffered a seizure while driving that resulted in a motor vehicle accident and that "they drew my blood and found the weed in my system but the doctor still said the accident was caused by a seizure, not by the weed." (*Id.*, Ex. N.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on August 24, 2020 with the filing of the original Complaint. (ECF No. 1.) Following the Court's Order on March 24, 2022 on Defendants' motion to dismiss, Plaintiff filed an Amended Complaint on June 28, 2022. (ECF Nos. 27, 33.) On July 13, 2023, the Court denied Defendants' motion to dismiss as to Plaintiff's federal claims for excessive force and false arrest against Defendant (ECF No. 51.) The Court dismissed without prejudice Plaintiff's remaining federal claims and state law claims for defamation and dismissed with prejudice Plaintiff's state law claims for intentional infliction of emotional distress, assault, battery, false arrest, and negligence, with leave to file a Second Amended Complaint on the claims dismissed without prejudice. (ECF No. 51.) Following Plaintiff's failure to file a Second Amended Complaint by the Court-ordered deadline, the Court dismissed with prejudice the claims previously

dismissed without prejudice, thereby remaining only the claims for false arrest and excessive force against Defendant. (ECF No. 56.)

Following discovery, the Parties moved for summary judgment pursuant to Rule 56. Plaintiff filed a memorandum of law ("Pl. Mem. of L.", ECF No. 94) with several supporting exhibits ("Def. Ex.," ECF Nos. 95, 104), Plaintiff's Declaration ("Pl. Decl.", ECF No. 96), a Rule 56.1 Statement ("Pl. 56.1", ECF No. 97), a Reply/Opposition ("Pl. Reply", ECF No. 103), and a Counter-Statement of Facts ("Pl. 56.1 Opp.", ECF No. 105). Defendant filed a memorandum of law ("Def. Mem. of L.", ECF No. 99) with several supporting exhibits ("Pl. Ex.", ECF No. 100), Defendant's Declaration ("Def. Decl.", ECF No. 101), a Rule 56.1 Statement and Counter-Statement ("Def. 56.1" / "Def. 56.1 Opp.", ECF No. 102), and a Reply/Opposition ("Pl. Reply", ECF No. 106).

## LEGAL STANDARDS

### A. Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure 56(a), summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact, and the Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Once that burden is met, the nonmoving party must do more than raise "some metaphysical doubt as to

the material facts" and instead "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). The nonmoving party may not rely on "mere speculation or conjecture" to defeat summary judgment. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

Local Civil Rule 56.1 requires the movant to submit a "short and concise statement…of the material facts as to which the moving party contends there is no genuine issue to be tried" and each fact is deemed admitted unless properly controverted by a correspondingly numbered response supported by admissible evidence. Local Civ. R. 56.1(a)–(d). Nonetheless, a reviewing court "may not rely solely on the statement of undisputed facts[,] ... [i]t must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co.*, 373 F.3d at 244 (citing *Giannullo v. City. of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)). In deciding a motion for summary judgment, the Court must determine not whether the evidence favors one side over the other, but whether a reasonable jury could return a verdict for the nonmoving party. *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). Credibility assessments and the resolution of conflicting evidence are matters reserved for the jury and are not appropriate at the summary judgment stage. *Id.*

### B.  42 U.S.C. § 1983 Claims

Plaintiff brings this claim pursuant to 42 U.S.C. § 1983. Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive

rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

### A. False Arrest

#### 1. Applicable Law

A federal false arrest claim under § 1983 is "substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To establish false arrest under New York law, a plaintiff must show that: "(i) the defendant intended to confine [the plaintiff], (ii) the plaintiff was conscious of the confinement, (iii) the plaintiff did not consent to the confinement, and (iv) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (internal quotation marks omitted). Probable cause is a complete defense to a claim of false arrest. *Id.* An officer has probable cause to arrest when he possesses "reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* (quotation marks and alterations omitted). The relevant inquiry is "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Id.* (internal quotation marks omitted). There need not have been

probable cause for the specific charge invoked at the time of arrest; rather, probable cause to arrest for *any* offense is sufficient. *Id.* at 20.

In the context of § 1983 false arrest claims, an arresting officer is entitled to qualified immunity if there was "arguable probable cause" at the time of the arrest. *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). The same standard applies to false arrest claims brought under New York law. *Jenkins v. City of N.Y.*, 478 F.3d 76, 88 (2d Cir. 2007). Arguable probable cause is assessed under an objective standard. It exists where either "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Zalaski*, 723 F.3d at 390). The analysis turns on "the information possessed by the officer at the time of the arrest," not the officer's "subjective intent, motives, or beliefs." *Id.* (quoting *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010)). Accordingly, an officer is entitled to qualified immunity "unless 'no reasonably competent officer' could have concluded, based on the facts known at the time of arrest, that probable cause existed." *Figueroa*, 825 F.3d at 100 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Therefore, even "in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002).

### 2. Summary Judgment is Granted in Defendant's Favor as to Plaintiff's False Arrest Claim

Probable cause is assessed based on the facts known to the arresting officer *at the time of arrest*, and it does not require certainty as to the precise cause of a motor vehicle accident or impairment. Even when viewing the record in the light most favorable to Plaintiff, "no reasonably competent officer" could conclude that Defendant lacked probable cause to arrest Plaintiff.

9

*Figueroa*, 825 F.3d at 100. Here, the record supports that multiple things likely were true at once: the evidence suggests that Plaintiff may have suffered a seizure prior to the accidents, and it also supports the conclusion that Plaintiff had smoked marijuana earlier that same day. Those propositions are not mutually exclusive, and the existence of a medical explanation for a car accident does not negate probable cause where an officer possesses "reasonably trustworthy information" that a traffic offense may have also occurred. *Ackerson*, 702 F.3d at 19.

At the time of the arrest, Defendant was aware that Plaintiff had been involved in two motor vehicle accidents occurring just minutes apart. (Def. 56.1 ¶ 3.) The record further contains evidence that Plaintiff stated to the treating EMT paramedic at the scene that he had smoked marijuana earlier in the day and had taken prescribed medication for chronic pain, and that a trooper was present and within earshot when those statements were made. (Def. Ex. K.) Those statements are contemporaneously documented in the EMT's Patient Care Report and were later confirmed by the EMT in a sworn statement. (Def. Exs. J, K.) Plaintiff's attempt to undermine the credibility or admissibility of the EMT's Affirmation by challenging the format of the document is unavailing. (Pl. Reply at 4.) Both Plaintiff's statement at the scene and the EMT's Patient Care Report are admissible evidence that may be used at trial. Plaintiff's statement to the EMT constitutes an opposing party's statement under Federal Rule of Evidence ("FRE") 801(d)(2)(A) and, alternatively, a statement made for purposes of medical diagnosis or treatment under FRE 803(4). Because the statement was voluntarily made by Plaintiff in his individual capacity and is offered against him, it is admissible as an opposing party's statement under FRE 801(d)(2)(A). Similarly, Rule 803(4) excludes from the rule against hearsay "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." FRE

10

803(4). Here, Plaintiff volunteered that he had smoked marijuana earlier in the day to the EMT paramedic who was providing medical assistance at the scene of the motor vehicle accident, a statement reasonably pertinent to the paramedic's medical assessment and treatment. Taken together, these facts provided Defendant with reasonably trustworthy information sufficient to warrant a reasonable belief that Plaintiff had operated a motor vehicle while impaired. Evidence that an off-duty police detective at the scene believed Plaintiff appeared to be having a seizure, that a witness observed what appeared to be vomit on Plaintiff, and that Plaintiff himself reported experiencing a seizure supports only the conclusion that Plaintiff likely did suffer a seizure before the accidents—not that he did not also smoke marijuana prior to driving.

Plaintiff's reliance on subsequent medical evidence does not change this conclusion. For example, Plaintiff provides that his medical provider later documented that Plaintiff suffered a seizure on the date of the accidents due to medication noncompliance, that certain medications Plaintiff was consuming may cause false positives for THC in drug testing, and that Plaintiff had long been prescribed oxycodone for chronic pain. (Pl. 56.1 ¶¶ 59–62.) Those facts, even if true, do not negate the information available to Defendant *at the time of arrest*, nor do they require an officer to credit a medical explanation over contemporaneous admissions and observable circumstances suggesting impairment. Probable cause does not demand that an officer resolve competing medical theories, eliminate every innocent explanation, or anticipate later-developed evidence. *See Cornett v. Brown,* No. 04-CV0754 (DGT)(LB), 2006 WL 845568, at *7 (E.D.N.Y. Mar. 30, 2006) ("[W]hile an arresting officer may not disregard information known to him in making an arrest, he is not required 'to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest.'" (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135–36 (2d Cir. 2003))). Further, Plaintiff's

argument that Defendant unlawfully interrogated him at Danbury Hospital in Connecticut is not compelling. (Pl. Reply at 7–8.) Even if any questioning at the hospital was improper, the record reflects that, prior to Plaintiff's transport (and said questioning), Plaintiff had already reported to the treating EMT at the accident scene in New York that he had smoked marijuana earlier in the day and that Defendant had overheard the statement. That statement alone was sufficient to establish probable cause to arrest Plaintiff.

Moreover, even assuming, arguendo, that actual probable cause was lacking, Defendant would nonetheless be entitled to qualified immunity because, at a minimum, arguable probable cause existed. Given the totality of the circumstances—including Plaintiff's involvement in multiple accidents, reports of a seizure, physical indicia observed by witnesses, and Plaintiff's reported admissions of marijuana use and prescription medication use—officers of reasonable competence could disagree as to whether probable cause existed.

Accordingly, because the undisputed record demonstrates that Defendant possessed reasonably trustworthy information sufficient to establish probable cause at the time of the arrest, the Court finds no genuine dispute that Defendant acted with probable cause to effect a lawful arrest, and Plaintiff's false arrest claim fails as a matter of law. In any event, Defendant is, at a minimum, entitled to qualified immunity because officers of reasonable competence could disagree as to whether probable cause existed under these circumstances. Summary judgment is therefore granted in Defendant's favor on Plaintiff's false arrest claim.

### B. Excessive Force

#### 1. Applicable Law

Excessive force claims brought pursuant to the Fourth Amendment "are properly analyzed under the Fourth Amendment's objective reasonableness standard." *Shamir v. City of New York*,

804 F.3d 553, 556 (2d Cir. 2015) (internal quotations omitted). A police officer's use of force is excessive "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Factors relevant to this inquiry include: "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001)). The "'reasonableness' of a particular use of force [is] judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 397). "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Id.* at 103. "[I]t is…well established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional rights." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 797 (S.D.N.Y. 2021) (quoting *Mesa v. City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013)). However, "[i]t is the *force used*, not the injuries caused, which must be determined to be *de minimis* as a matter of law." *Campbell v. City of New York*, No. 06-CV-5743, 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010)).

### 2. Summary Judgment is Denied for Both Parties as to Plaintiff's Excessive Force Claim

The record reflects a genuine dispute of material fact concerning the amount of force, if any, Defendant used during Plaintiff's arrest. Plaintiff alleges that Defendant violently shook him,

13

slapped him in the face multiple times, and struck him about the head and body. (Pl. 56.1 ¶ 10; Def. 56.1 Opp. ¶ 10.) Defendant denies these allegations and contends that, even if they were true, any force used was *de minimis* and reasonable. (Def. 56.1 Opp. ¶ 10; Def. Mem. of L. at 10–12.)

Assuming Plaintiff's allegations to be true for purposes of summary judgment, Defendant's use of force was neither *de minimis* nor reasonable. *See Campbell v. City of New York*, No. 06 CV 5743 (HB), 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010) (holding that alleged slapping and cigarette burns during interrogation "cannot conceivably be deemed a *de minimis* use of force if it in fact occurred"). Nor could such force be deemed reasonable in light of the alleged disparity between the threat posed by Plaintiff and the force used. Plaintiff claims that he was restrained in his vehicle, pleading for help, and in "significant pain and in need of medical attention" at the time Defendant allegedly struck him. (Pl. 56.1 ¶¶ 9–12; Def. 56.1 Opp. ¶¶ 9–12.) Where, as alleged here, force is used against an unresisting and already-restrained individual, even relatively limited physical force may be found excessive. *See Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 391 (S.D.N.Y. 2009).

Plaintiff further alleges that Defendant's actions "exacerbated" his injuries, including a "compression fracture of [the] spine, concussion, and bruising to [the] shoulder, chest, and ribs." (Pl. 56.1 ¶ 51; Def. 56.1 Opp. ¶ 51; Pl. Reply at 11–12.) Although Plaintiff's use of the term "exacerbated" is vague and the record is bereft of details regarding the extent to which Defendant's alleged conduct worsened Plaintiff's injuries, courts within the Second Circuit have held that such allegations may nonetheless suffice to survive summary judgment. *See In re Dayton*, 786 F. Supp. 2d 809, 828–30 (S.D.N.Y. 2011) (declining to grant summary judgment where plaintiff consistently alleged that officers exacerbated preexisting injuries).

Nonetheless, the evidentiary record on Plaintiff's excessive force claim is thin and amounts to no more than "he said, he said." Plaintiff offers no corroborating evidence beyond his own testimony, and Defendant likewise offers no evidence refuting Plaintiff's account or otherwise explaining the alleged use of force. At the summary judgment stage, the Court may not resolve credibility disputes or weigh competing versions of events. Where, as here, the claim turns on sharply conflicting accounts of what occurred, the issue must be resolved by a jury. Accordingly, Plaintiff's and Defendant's motions for summary judgment on Plaintiff's excessive force claim are denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED on Plaintiff's false arrest claim, and both Plaintiff's and Defendant's motions for summary judgment are DENIED on Plaintiff's excessive force claim.

As discussed in footnote 1, Plaintiff's motion for summary judgment on the claims of malicious prosecution, unlawful search of his vehicle, and unlawful seizure of his blood is moot, as those claims were dismissed by this Court's Order on September 29, 2023.

A telephonic Pretrial Conference is scheduled for March 4, 2026 at 11:00 am. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (855) 244-8681; (2) Enter the Access Code: 2310 494 3855; and (3) Press pound (#) to enter the teleconference.

The Clerk of Court is directed to terminate the motions at ECF Nos. 93 and 98.

SO ORDERED.

Dated: January 23, 2026
White Plains, New York

Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.